The TIGER INN, a New Jersey Corporation, Plaintiff,

v.

W. Cary EDWARDS, Attorney General of New Jersey, and Pamela Poff, Director, New Jersey Department of Law & Public Safety, Division on Civil Rights, Defendants.

The IVY CLUB, a New Jersey Corporation, Plaintiff,

v.

W. Cary EDWARDS, Attorney General of New Jersey, and Pamela Poff, Director, New Jersey Department of Law & Public Safety, Division on Civil Rights, Defendants.

Civ. No. 86–609.

United States District Court, D. New Jersey.

June 9, 1986.

Russell Beatie, for plaintiff Tiger Inn.

Barbara Nelson, Princeton, N.J., for plaintiff Ivy Club.

Nancy Kaplan Miller, Deputy Atty. Gen., Newark, N.J., for defendants Edwards and Poff.

COWEN, District Judge:

In December 1979, Sally Frank, then a student at Princeton, filed a verified complaint with the New Jersey Division on Civil Rights alleging that three eating clubs at Princeton, the Tiger Inn, the Ivy

Club, and the University Cottage Club, violated the New Jersey Law Against Discrimination by admitting only male Princeton students. In December 1981, the Division dismissed the complaint, finding that it had no jurisdiction over the clubs because they were "in their nature distinctly private." *See* N.J.S.A. 10:5–5(*l* ). In August 1983, the Appellate Division, while taking no position on the merits, vacated the Division's decision and remanded for further fact finding.

The Division conducted further fact finding, and, in May 1985, issued a Finding of Probable Cause, both as to jurisdiction and as to discrimination. Upon the request of Sally Frank, the matter was transferred to the Office of Administrative Law. In December 1985, the ALJ granted partial summary decision (analogous to partial summary judgment) on the jurisdictional issue.

The clubs then obtained a stay of proceedings "pending the completion of all possible means of reviewing the determination that the respondent clubs are subject to" the Law Against Discrimination. *See* Exhibit B, Brief of Ivy Club. In granting the stay, the ALJ noted:

> This decision is based on my belief that the jurisdictional issue is important, if not critical, to the ultimate disposition of the matter and on the representation [*sic*] of Mr. Beatie that he will seek leave to appeal my ruling to the Appellate Division. . . .

*See* Exhibit D, Brief of Ivy Club.

After the stay was granted, the Director accepted the ALJ's decision. The Tiger Inn and Ivy Club then filed complaints in this court.[1] They allowed their time to seek an interlocutory appeal before the Appellate Division to lapse.

Before this court, the clubs contend that the exercise of jurisdiction by the Division of Civil Rights violates their civil rights under the federal constitution. In particular, they claim that the Law Against Discrimination is void for vagueness; that application of the Law Against Discrimination

to them violates their freedom of association; and that the administrative procedures have violated their due process rights. They seek a declaratory judgment and an injunction against the state proceedings. Defendants are Attorney General W. Cary Edwards and Director of Civil Rights Pamela Poff.

Defendants move to dismiss for lack of subject matter jurisdiction. In the alternative, they move for abstention pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

## SUBJECT MATTER JURISDICTION

■ Defendants claim that the clubs are attempting to appeal an adverse decision in the state legal system to a federal district court. Since this court's jurisdiction is original, not appellate, they argue that this court lacks jurisdiction.

It is certainly true that a 42 U.S.C. § 1983 action is not an appropriate vehicle to appeal a state court judgment. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1982); *Carbonell v. Louisiana Dept. of Health and Human Resources,* 772 F.2d 185 (5th Cir.1985). However, nothing in this doctrine suggests that it applies to decisions made by state administrative agencies in administrative proceedings in addition to judgments rendered by state courts in judicial proceedings. Such an expansion of the doctrine would, in many cases, undermine the well established principle that a plaintiff need not exhaust state remedies before suing under 42 U.S.C. § 1983. See *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Williams v. Red Bank Board of Education,* 662 F.2d 1008, 1017 (3d Cir.1981).

The court finds that it has subject matter jurisdiction.

## YOUNGER ABSTENTION

Defendants argue that dismissal is appropriate under *Younger v. Harris,* 401

---

1. Their separate complaints were consolidated on consent. The University Cottage Club settled

with Sally Frank by changing its admission policy and by paying $20,000.

U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger*, the Supreme Court held that a federal court should ordinarily abstain from enjoining a pending state criminal proceeding. Although the *Younger* doctrine has been expanded well beyond the criminal sphere, the Third Circuit has held that "outside the special context of civil contempt proceedings, the *Younger* doctrine should not be extended to cases in which the state proceedings have not been initiated by the state itself." *Johnson v. Kelly*, 583 F.2d 1242, 1249 (3d Cir.1978); *See also Kentucky West Virginia Gas Company v. Pennsylvania Public Utility Commission*, 791 F.2d 1111, 1116–17 (3d Cir.1986).

In arguing for *Younger* abstention, defendants rely upon *Williams v. Red Bank Bd. of Ed.*, 662 F.2d 1008 (3d Cir.1981). In *Williams*, the Third Circuit found that a local school board, in bringing disciplinary charges against a teacher, was discharging responsibilities delegated to it by the state. Therefore, the court concluded, abstention was appropriate despite the fact that the state itself had not initiated the action. Defendants contend that just as the state delegated its responsibilities to the local school board in *Williams*, so too the state in this case has simply authorized private individuals to enforce its civil rights laws. They note that, pursuant to the Law Against Discrimination, the state has been monitoring the matter and is prepared to intervene should the plaintiff in the state action fail to protect the public interest. *See* N.J.S.A. 10:5–13.

In addition, defendants argue that the central consideration in an analysis of *Younger* abstention is the strength of the state's interest. They emphasize that New Jersey has made clear that discrimination is a significant matter of public concern because it "menaces the institutions and foundation of a free democratic State." N.J.S.A. 10:5–3.

This case presents a close question and perhaps calls for a small expansion of the *Younger* doctrine. The state does appear to be intimately involved with the state proceeding. Indeed, it is the Attorney General and the Director of the Division on Civil Rights, not Sally Frank, whom the clubs seek to enjoin. Nevertheless, in light of the disposition below, it is unnecessary for the court to decide this issue.

PULLMAN ABSTENTION

■ Defendants also contend that this court should abstain pursuant to *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under *Pullman*, the federal court should abstain from deciding a question of federal constitutional law where the challenged state law is unsettled and resolution of the state law claim may make it unnecessary to address the federal constitutional issue. *See generally* Wright, Miller and Cooper, Federal Practice and Procedure, Section 4242.

This case presents a classic situation for *Pullman* abstention. The New Jersey Law Against Discrimination provides an exception for "any institution, bona fide club, or place of accommodation, which is in its nature distinctly private." N.J.S.A. 10:5–5(*l*). It is unclear, as a matter of state law, whether the clubs are "distinctly private." *Cf. Kentucky West Virginia Gas Company v. Pennsylvania Public Utility Commission*, 791 F.2d at 1116–17 (3d Cir.1986). Indeed, the Division on Civil Rights initially held that they were. The Appellate Division, in vacating this judgment, voiced no opinion on the applicability of the Law Against Discrimination to the clubs. Instead, it simply remanded for further fact-finding. Moreover, in staying the proceedings pending appeal, the ALJ implied that it was a difficult question of state law. Thus, despite plaintiffs' claims to the contrary, the court finds that the state law is unclear.

■ Plaintiffs also argue against abstention by emphasizing that First Amendment rights should be vindicated quickly and not subject to the delays which accompany abstention. This argument ignores that plaintiffs are continuing to operate without admitting women during the pendency of the state litigation. No one is depriving

them of their claimed constitutional right to do so.

■ In addition, plaintiffs contend that they have very little chance of success on appeal to the Appellate Division in light of the scope of review of administrative determinations. However, plaintiffs' apprehension concerning administrative law are ill-founded. The Administrative Law Judge granted summary decision (analogous to summary judgment) and thus found that there was no genuine dispute of material fact. Thus the question to be reviewed regarding the applicability of the Law Against Discrimination is a question of law.[2]

Under New Jersey law, "[a]n appellate tribunal is ... in no way bound by the agency's interpretation of a statute or its determination of a purely legal issue." *Mayflower Securities v. Bureau of Securities*, 64 N.J. 85, 93, 312 A.2d 497 (1973). Similarly, in *Abbott v. Burke*, 100 N.J. 269, 495 A.2d 376 (1985) the New Jersey Supreme Court held that "although an agency may base its decision on constitutional considerations, such legal determinations do not receive even a presumption of correctness on appellate review." *Id.* at 299, 495 A.2d 376. Particularly where a statute must be interpreted in light of constitutional considerations, there is no reason to believe that a New Jersey court would defer to an administrative interpretation of that statute rendered in the course of enforcement proceedings. *Cf. Bergen Pines Hospital v. Department of Human Services*, 96 N.J. 456, 476 A.2d 784 (1984) (agency regulation accorded presumption of validity and reasonableness).

It is undisputed that a determination that the New Jersey Law Against Discrimination does not apply to the plaintiffs would obviate the need to adjudicate the constitutional issues raised in this case. Therefore,

the court will abstain from exercising its jurisdiction.

■ The normal course when a court abstains pursuant to *Pullman* is to stay the federal action pending a determination of the state law by the state courts. The plaintiff simply files a complaint and litigates the action in state court.[3] He has the choice of either submitting the federal constitutional issues to the state court or reserving them for the federal court. *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

The defendants in this case contend that the plaintiffs have already submitted their federal constitutional claims to the state administrative law judge as well as to the Appellate Division, thus making it impossible for them to invoke *England* reservation. They contend that a party may not "reserve" the federal forum once they have submitted federal issues to the state court. Plaintiffs, on the other hand, contend that *England* only blocks return to the federal court after the federal claims are "fully litigated" in the state courts. They argue that they will preserve their federal forum by declining in the future to raise federal constitutional issues in the state litigation.

Defendants appear to have the better of the argument. In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court noted that *England* only applied "[w]here a plaintiff properly invokes federal-court jurisdicton [sic] in the first instance." *Id.* at 101–02 n. 17, 101 S.Ct. at 418–19 n. 17. *Allen*, however, was not an abstention case. Rather, it held that collateral estoppel barred a 42 U.S.C. § 1983 damage claim regarding the constitutionality of search and seizure where the plaintiff had lost his motion to suppress in his criminal trial. Thus while *Allen* supports defendants' position, it does not necessarily foreclose plaintiffs' position.

---

2. Plaintiffs also claim that the Administrative Law Judge treated as undisputed certain facts that were in dispute. It is difficult to see how, if this is true, the action of the Administrative Law Judge in this regard could be anything but arbitrary and capricious.

3. In states which permit it, the state law question is directly certified from the federal court to the highest state court. *Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976).

*Oler v. Trustees of Cal. State University,* 80 F.R.D. 319 (N.D.Cal.1978), a case not cited by the parties, held that a plaintiff who filed an action in state court before filing in federal court could not make an *England* reservation since he had initially sought relief in the state court and had unreservedly raised his federal constitutional claims there. It, too, is distinguishable since plaintiffs in this action did not select the state forum.

The court finds, however, that the question of the appropriateness of *England* reservation is not properly before it at this time. In effect, a ruling on this question would be a ruling on the *res judicata* effect of a state court judgment which has not yet been entered. Therefore, the court will stay the action until the state proceedings have produced a surer-footed reading of the New Jersey Law Against Discrimination. The above discussion regarding *England* is included in this opinion to ensure that the plaintiffs do not erroneously rely on the stay granted by the court as a determination that they may return to federal court to adjudicate their federal constitutional claims.

In summary, the court finds that it has subject matter jurisdiction over the case, but will stay the action until the New Jersey courts have clarified the application of the New Jersey Law Against Discrimination to the plaintiffs. This determination makes it unnecessary for the court to decide the question of *Younger* abstention. Plaintiffs are cautioned not to interpret the court's decision to grant a stay as a ruling that they have properly reserved their federal constitutional claims for federal court adjudication pursuant to *England.*

The court will enter an appropriate order.